```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
UNITED STATES OF AMERICA,                                  :
                                                           :
            -v-                                            :      23 Cr. 212 (JPC)
                                                           :
TYRONE BELL,                                               :      OPINION AND ORDER
                                                           :
                        Defendant.                         :
                                                           :
-----------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

The Government alleges that, on December 6, 2022, Defendant Tyrone Bell discharged a firearm in the vicinity of 366 Canal Place in the Bronx. *See* Dkt. 1 ("Complaint") ¶¶ 1, 4-6; Dkt. 6 ("Indictment") ¶ 1; *see also* Dkt. 25 ("Motion to Dismiss") at 1. Because Bell had previously been convicted of a felony, he now faces a federal criminal charge for unlawfully possessing ammunition on that date in violation of 18 U.S.C. § 922(g)(1). Indictment ¶ 1; *see* Complaint ¶ 3. The Court has set a trial date of April 22, 2024. *See* Dkt. 19.

On November 13, 2023, Bell filed three pretrial motions. First, Bell moves to dismiss the Indictment, challenging the constitutionality of Section 922(g)(1) under the Second Amendment. Dkt. 25. Second, Bell seeks suppression of statements he made to law enforcement on January 18, 2023, arguing that those statements were involuntarily given. Dkt. 24 ("Motion to Suppress"). And third, Bell also seeks suppression of the results of searches conducted of two cellular telephones that were seized incident to his arrest on January 18, 2023, citing the Government's delay in applying for a search warrant for those devices. Dkt. 23. The Government filed an omnibus opposition on November 30, 2023. Dkt. 28. For reasons that follow, the Court denies Bell's motion to dismiss and motion to suppress his January 18, 2023 statements, and will conduct oral argument on his motion to suppress the results of the cellphone searches on April 9, 2024, at 2:30 p.m.

## II. Motion to Dismiss the Indictment

Citing the Supreme Court's 2022 decision in *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), Bell seeks dismissal of the Indictment because his alleged conduct was protected by the Second Amendment. While Bell acknowledges that he has a criminal history, he maintains that Section 922(g)(1) infringes on his right to keep and bear arms because "neither the text of the Second Amendment nor historical tradition allow[s] the complete lifetime prohibition on [his] possession of guns." Motion to Dismiss at 3. Because the constitutionality of Section 922(g)(1) was upheld by the Second Circuit in *United States v. Bogle*, 717 F.3d 281 (2d Cir. 2013) (per curiam), and that decision was not disturbed by *Bruen*, Bell's motion to dismiss is denied. Indeed, this Court recently considered and rejected meaningfully indistinguishable arguments in *United States v. Hampton*, No. 21 Cr. 766 (JPC), 2023 WL 3934546 (S.D.N.Y. June 9, 2023).

As this Court concluded in *Hampton*, *id.* at *10-13, Section 922(g)(1) remains constitutional post-*Bruen*. In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court made clear that "the right secured by the Second Amendment is not unlimited" and that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 626. Two years later, the plurality in *McDonald v. City of Chicago*, 561 U.S. 742 (2010), "repeat[ed *Heller*'s] assurances" that the holding "did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons and the mentally ill." *Id.* at 786 (internal quotation marks omitted). The Court in *Bruen* characterized its holding as being "consistent with *Heller* and *McDonald*." 142 S. Ct. at 2122. And while the majority opinion in *Bruen* did not explicitly endorse felon-in-possession laws, it acknowledged that the right to keep and bear arms is "subject to certain reasonable, well-defined restrictions." *Id.* at 2156. In addition, six of the nine Justices authored or joined separate opinions which, among other things, noted that *Bruen* does not disrupt or abrogate *Heller*'s and *McDonald*'s endorsements of felon-in-possession

2

laws. In a concurring opinion joined by Chief Justice Roberts, Justice Kavanaugh noted that when "[p]roperly interpreted, the Second Amendment allows a 'variety' of gun regulations," including limitations on the possession of firearms by felons. *Id.* at 2162 (Kavanaugh, J., concurring) (quoting *Heller*, 554 U.S. at 636). Justice Alito similarly "reiterate[d]" that "[a]ll that we decide in this case is that the Second Amendment protects the right of law-abiding people to carry a gun outside the home for self-defense and that the Sullivan Law . . . is unconstitutional," but that the Court's holding does not "disturb[] anything that we said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns." *Id.* at 2157, 2159 (Alito, J., concurring). The three dissenting Justices also noted that they "underst[ood] the Court's opinion today to cast no doubt on th[e] aspect of *Heller*'s holding" that felon-in-possession laws are "presumptively lawful." *Id.* at 2189 (Breyer, J., joined by Sotomayor and Kagan, JJ., dissenting).

In addition, following *Heller* and *McDonald,* the Second Circuit held in *Bogle* that "Section 922(g)(1) is a constitutional restriction on the Second Amendment rights of convicted felons." 717 F.3d at 281-82. In doing so, the Second Circuit rejected a defendant's argument that Section 922(g)(1) violated his Second Amendment rights under "recent Supreme Court opinions [*i.e.*, *Heller* and *McDonald*] developing a more expansive interpretation of the Amendment," and explained that "in both of these opinions, the Supreme Court clearly emphasized that recent developments in Second Amendment jurisprudence should not 'be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.'" *Id.* at 281 (quoting *Heller*, 554 U.S. at 626).

The Court also is not persuaded by Bell's argument that the standard articulated in *Bruen*, including its repudiation of the "'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny,"[1] *Bruen*, 142 S. Ct. at 2125, compels a

---

[1] Under that prior framework, courts first would "determine whether the challenged

different result.  *See* Motion to Dismiss at 5.  The *Bruen* Court articulated the following standard for applying the Second Amendment to a government firearm regulation: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."  *Bruen*, 142 S. Ct. at 2129-30.  *Bogle* was not inconsistent with that approach.  In *Bogle*, the Second Circuit did not employ a means-ends interest balancing; rather the Second Circuit reasoned purely from language in *Heller* and *McDonald* expressly affirming "longstanding prohibitions on the possession of firearms by felons."  *Bogle*, 717 F.3d at 281 (internal quotation marks omitted).  And again, the Court in *Bruen* made clear that its holding was "consistent with *Heller* and *McDonald*."  142 S. Ct. at 2122.

Thus, judges in this District have repeatedly held that *Bruen* did not disturb the Second Circuit's holding in *Bogle*.  *See, e.g.*, *United States v. Gonzalez*, No. 23 Cr. 18 (MKV), 2024 WL 96517, at *2-5 (S.D.N.Y. Jan. 9, 2024); *United States v. Davila*, No. 23 Cr. 292 (JSR), 2023 WL 5361799, at *2-3 (S.D.N.Y. Aug. 22, 2023); *United States v. Garlick*, No. 22 Cr. 540 (VEC), 2023 WL 2575664, at *4-5 (S.D.N.Y. Mar. 20, 2023); *United States v. Barnes*, No. 22 Cr. 43 (JPO), 2023 WL 2268129, at *1-2 (S.D.N.Y. Feb. 28, 2023).  This Court, as it did in *Hampton*, does as well.

To the extent Bell seeks to separately advance an as-applied challenge with respect to his particular criminal history, that too is rejected.  As proffered by the Government, Bell's prior felony convictions—a November 22, 2004 conviction for attempted robbery in the third degree and an

---

legislation impinges upon conduct protected by the Second Amendment" and, if so, then would determine "the appropriate level of scrutiny to apply and evaluate the constitutionality of the law using that level of scrutiny."  *United States v. Jimenez*, 895 F.3d 228, 232 (2d Cir. 2018); *accord Bruen*, 142 S. Ct. at 2126 ("At the second step, courts often analyze 'how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right.'" (quoting *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019))).  While the *Bruen* Court largely agreed with the first step as "broadly consistent with *Heller*," because that step examines the Second Amendment's text informed by history, the Court made clear that the second step—the means-ends balancing—is not part of the inquiry.  *Bruen*, 142 S. Ct. at 2127.

October 12, 2022 conviction for attempted criminal possession of a weapon in the second degree (less than two months before the alleged unlawful ammunition possession here), Opposition at 3-4; Complaint ¶ 3—fall squarely within Section 922(g)(1), which, as discussed, is constitutional. *See* 18 U.S.C. § 922(g)(1) (applying to a person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year"); *see also* Motion to Dismiss at 1 ("Mr. Bell is 37, and although he has some criminal history, all but one of his prior convictions are more than a decade old."). Accordingly, Section 922(g)(1) is not unconstitutional as applied to Bell. *See, e.g.*, *United States v. Sternquist*, No. 22 Cr. 473 (DLI), 2023 WL 6066076, at *6 (E.D.N.Y. Sept. 15, 2023); *Davila*, 2023 WL 5361799, at *5 n.7; *United States v. King*, 634 F. Supp. 3d 76, 83 (S.D.N.Y. 2022).

Bell's motion to dismiss the Indictment therefore is denied.

### II. Motion to Suppress Bell's January 18, 2023 Statements

The parties seem to agree that an officer of the New York City Police Department ("NYPD") conducted a custodial interview of Bell on January 18, 2023. *See* Complaint ¶ 6; Motion to Suppress at 1 (seeking "an Order suppressing Mr. Bell's post-arrest statements"). The Government has submitted a video of that interview, Opposition, Exh. A ("Video"), and contends that Bell was advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966); knowingly, intelligently, and voluntarily waived those rights; and made a series of inculpatory statements. Opposition at 4-6. Bell, in turn, seeks to suppress his January 17, 2023 statements, contending that "his statements were involuntary" because he "did not voluntarily and knowingly waive his *Miranda* rights." Motion to Suppress at 2-4.

The Fifth Amendment protects an individual's right against self-incrimination: "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const.

amend. V.[2]  In *Miranda*, the Supreme Court held that criminal defendants are entitled to prophylactic warnings advising them of their right not to incriminate themselves. 384 U.S. at 467-74.  "The purpose of the *Miranda* warning is to ensure that the person in custody has sufficient knowledge of his or her constitutional rights relating to the interrogation and that any waiver of such rights is knowing, intelligent, and voluntary." *United States v. Carter,* 489 F.3d 528, 534 (2d Cir. 2007) (citing *Miranda*, 384 U.S. at 444-45).  "An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver . . . .  The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).

Pursuant to *Miranda* and its progeny, "[t]he police may use a defendant's confession [obtained during a custodial interrogation] without transgressing his Fifth Amendment right only when the decision to confess is the defendant's free choice." *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997) (second alteration in original) (quoting *United States v. Anderson*, 929 F.2d 96, 98 (2d Cir. 1991)).  To assess the voluntariness of a confession, a court "consider[s] the totality of all the surrounding circumstances." *United States v. Estime*, No. 19 Cr. 711 (NSR), 2020 WL 6075554, at *10 (S.D.N.Y. Oct. 14, 2020) (quoting *United States v. Bye*, 919 F.2d 6, 9 (2d Cir. 1990)).  Moreover, "[c]ourts have repeatedly held that a *Miranda* waiver may be voluntary even if the speaker is under the influence of alcohol or narcotics." *Grecco v. United States*, Nos. 19 Civ.

---

[2] Bell also alleges that this custodial interview violated his rights under the Sixth Amendment, *see* Motion to Suppress at 1, which protects the right of "the accused" to have counsel assist "in all criminal prosecutions," U.S. Const. amend VI.  However, the Sixth Amendment "does not attach until a prosecution is commenced, that is, 'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) (quoting *United States v. Gouveia*, 467 U.S. 180, 188 (1984)).  The interrogation at issue took place almost three months prior to the filing of the Indictment on April 24, 2023, and therefore Bell's motion to suppress his January 18, 2023 statements is more properly evaluated under the Fifth Amendment.

7950 (KMK), 14 Cr. 760 (KMK), 2023 WL 6294334, at *6 (S.D.N.Y. Sept. 27, 2023) (collecting cases); *accord United States v. Wyche*, 307 F. Supp. 2d 453, 463 (S.D.N.Y. 2004). "Where a defendant moves to suppress a statement allegedly obtained in violation of *Miranda*, the Government bears the burden of proving by a preponderance of the evidence that the defendant knowingly and voluntarily waived his rights." *United States v. Morales*, 280 F. Supp. 2d 262, 270 (S.D.N.Y. 2003) (citing *United States v. Male Juvenile*, 121 F.3d 34, 39-40 (2d Cir. 1997)).

Bell does not appear to dispute that he was advised of his *Miranda* rights. This is not surprising, as the video of the interview provided by the Government—a video that Bell himself relies on in his motion, *see* Motion to Suppress at 3—makes clear that the interviewing officer advised Bell of his *Miranda* rights, that Bell acknowledged his understanding of these rights, and that Bell agreed to speak with the officer. *See generally* Video. As reflected in that video, Bell walked into the interview room with the officer, told the officer that he would soon be a father, and asked for a cigarette. Video at 3:15-3:40. Before beginning the interview, the officer introduced himself as a detective, *id.* at 4:58-5:00, informed Bell that he was in custody, *id.* at 5:29-5:30, and advised Bell of his rights by asking the following questions, and after each Bell answered verbally and in the affirmative:

- "You have the right to remain silent and to refuse to answer any questions. Do you understand?"
- "Anything you do say may be used against you in a court of law. Do you understand?"
- "You have the right to consult with an attorney before speaking to police and to have an attorney present during any questioning now or in the future. Do you understand?"
- "If you cannot afford an attorney, one will be provided for you without any cost. Do you understand?
- "If you do not have an attorney available, you have the right to remain silent until you

7

have the opportunity to consult with one.  Do you understand?"
*Id.* at 5:29-6:27; *see* Opposition, Exh. B ¶ 8 (search warrant affidavit of an NYPD detective, attesting that, "on or about January 18, 2023, BELL was advised of his *Miranda* rights, waived those rights, and agreed to participate in an interview with an NYPD Detective that was video-recorded"); Dkt. 28-1 (Bell's motion to suppress searches of electronic devices attaching same affidavit).  After being advised of his *Miranda* rights, Bell confirmed that he was willing to answer the detective's questions.  Video at 6:27-6:31.  The interview then proceeded.  The video reflects that the interview was cordial throughout and at no point during the interview was Bell in restraints.

Bell argues in his brief that his statements nonetheless should be suppressed because his "mental acuity was significantly compromised during his interrogation," citing his limited intellectual functioning and his intoxication at the time of the questioning.  Motion to Suppress at 2-3.  In particular, Bell's attorney points to the following: (1) Bell "dropped out of high school in 10th grade" and, prior to that, "had attended six different schools—many for only a single school year, and he always struggled to keep up"; (2) Bell repeatedly attempted and failed to pass the GED, most recently "a few months ago"; (3) although Bell "has not yet been evaluated by a psychological expert, counsel is confident that his intellectual functioning would test significantly below average"; and (4) Bell was intoxicated throughout the interrogation, because he "had been drinking and smoking marijuana all evening through 7am on the day of his arrest." *Id.* at 2-3 & n.1.  Bell's attorney also contends that Bell's answers to various questions during the interrogation reflect that he was intoxicated and confused, *id.* at 3, whereas the Government disputes the suggestion that Bell lacked competency during the interview, Opposition at 6-7, 44.  From viewing the video of the interview, the Court shares the Government's assessment: throughout the interview, Bell appeared to fully understand the questions being asked of him and there was no indication that Bell was confused by any question or otherwise incompetent to participate in the interview.  *See generally*

8

Video.

In the face of this evidence that Bell was advised of his *Miranda* rights and waived them, the burden shifts to Bell.  When challenging the voluntariness of a *Miranda* waiver, a defendant must demonstrate "that disputed issues of material fact exist before an evidentiary hearing is required."  *United States v. Birkett*, No. 99 Cr. 338 (RWS), 1999 WL 689992, at *7-8 (S.D.N.Y. Sept. 2, 1999) (quoting *United States v. Castellano*, 610 F. Supp. 1359, 1439 (S.D.N.Y. 1985)); *accord United States v. Washington*, No. 12 Cr. 146 (JPO), 2012 WL 5438909, at *8 (S.D.N.Y. Nov. 7, 2012) ("A defendant seeking a hearing on a suppression motion bears the burden of showing the existence of disputed issues of material fact." (quotation omitted)).  The Second Circuit has explained that "where no evidentiary facts are alleged to support a bald allegation of mental incompetence, a hearing may not be required.  On the other hand, where the movant has raised detailed and controverted issues of fact, a hearing will be required."  *United States v. Miranda*, 437 F.2d 1255, 1258 (2d Cir. 1971) (internal citations omitted); *accord O'Neil v. United States*, 486 F.2d 1034, 1036 (2d Cir. 1973).  Such a showing, however, requires submission by the movant of "an affidavit of someone with personal knowledge of the underlying facts."  *Birkett*, 1999 WL 689992, at *7.  "Arguments made solely by defense counsel in motion papers 'cannot by themselves create a factual issue.'"  *United States v. Miller*, No. 18 Cr. 395 (NGG), 2019 WL 2088248, at *2 (E.D.N.Y. May 13, 2019) (quoting *United States v. Mottley*, 130 F. App'x 508, 510 (2d Cir. 2005)); *accord United States v. Hamilton*, 487 F. Supp. 3d 140, 148 (E.D.N.Y. 2020); *Washington*, 2012 WL 5438909, at *9.

Bell's motion to suppress his January 18, 2023 statements, which relies entirely on arguments by his attorney in his moving brief, is denied without a hearing.  Bell has not submitted a sworn affidavit establishing a question of fact as to whether he knowingly, intelligently, and voluntarily waived his *Miranda* rights, and instead relies solely on unsworn arguments by his

attorney. As noted, such arguments cannot substitute for the requirement of evidence from someone with personal knowledge. *See United States v. Helbrans*, No. 19 Cr. 497 (NSR), 2021 WL 3595720, at \*4 (S.D.N.Y. Aug. 13, 2021) (explaining where the defendant "did not submit an affidavit in support of his motion" to suppress statements, "without a supporting affidavit of someone with personal knowledge of the underlying facts, the court need not resolve factual disputes that may be presented by the moving papers" (quotation marks omitted)); *Hamilton*, 487 F. Supp. 3d at 148; *Miller*, 2019 WL 2088248, at \*2. In the absence of a sworn factual assertion based on personal knowledge calling into question the voluntariness of Bell's *Miranda* waiver, a disputed issue of material fact has not been established and an evidentiary hearing is not warranted. *See Birkett*, 1999 WL 689992, at \*7-8. Accordingly, Bell's motion to suppress his January 18, 2023 statements is denied as well.

### III. Motion to Suppress the Results of Searches of Cellular Phones

Lastly, the Court believes that its consideration of Bell's third motion, which seeks suppression of the results of searches of two cellular telephones that were seized incident to his arrest, would benefit from oral argument.

### III. Conclusion

Accordingly, Bell's motion to dismiss the Indictment and to suppress his January 18, 2023 statements are denied. The Court will hold oral argument on Bell's motion to suppress the results of searches of the two cellular phones on April 9, 2024, at 2:30 p.m. in Courtroom 12D of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007.

The Clerk of the Court is respectfully directed to close the motions at Docket Numbers 24 and 25.

SO ORDERED.

Dated: March 8, 2024
New York, New York

JOHN P. CRONAN
United States District Judge